NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                   )
                                   )   Hon. Garrett E. Brown, Jr.
IN RE: NEW JERSEY TITLE INSURANCE  )
LITIGATION                         )   Consolidated Civil Action 08-1425
                                   )
                                   )   **MEMORANDUM OPINION**
_____)

Joseph J. DePalma, Esq.
LITE, DEPALMA, GREENBERG & RIVAS
Two Gateway Center
12th Floor
Newark, New Jersey 07102-5003
*Liaison Counsel for Consolidated Plaintiffs*

Liza M. Walsh, Esq.
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
*Liaison Counsel for Consolidated Defendants*

**BROWN, Chief Judge:**

      This consolidated matter comes before the Court on Defendants' joint motion (Doc. No. 98) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]  Additionally, Defendants Stewart Information Services Corporation (SISC) and Old Republic International Corporation (ORIC) move (Doc. Nos. 99, 102) to dismiss the Complaint as against them pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.  For the following reasons, the Court will grant Defendants' joint 12(b)(6) motion and deny as moot the

---

      [1]This matter has been reassigned to the undersigned by Order of September 9, 2009.

1

jurisdictional motions of SISC and ORIC.

## I.   BACKGROUND

Plaintiffs are title insurance purchasers who represent a class of similarly situated consumers that claim they suffered injuries, in the form of inflated insurance rates, because of the unlawful price-fixing conspiracy of various insurance-provider Defendants who are members of the New Jersey Land Title Insurance Rating Bureau (NJLTIRB).  NJLTIRB functions as a title insurance rating organization pursuant to N.J. Stat. Ann. § 17:46B-46, which means that it operates, more or less, as a clearing house for its constituent members by collecting their proposed rates and supporting data and submitting them to the New Jersey Department of Banking and Insurance, which regulates insurance rates.

By Orders of August 5, 2008 and November 18, 2008 (Doc. No. 45; Civ. No. 08-5037, Doc. No. 7), Magistrate Judge Salas consolidated 10 separate actions alleging substantially the same antitrust violations.[2]  On September 19, 2008, Consolidated Plaintiffs filed an Amended Complaint alleging violations of Section I of the Sherman Act and the New Jersey Antitrust Act.

## II.   ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion

---

[2]The Court has consolidated the following civil actions under this heading: Nos. 08-1425, 08-1449, 08-1504, 08-1554, 08-1689, 08-1779, 08-2230, 08-2530, 08-3008, and 08-5037.

to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

     Here, Plaintiffs allege that Defendants, title insurance providers, conspired to inflate title insurance rates by forming the NJLTIRB, which collected their rate submissions and supporting data and submitted them to the New Jersey Department of Banking and Insurance (DOBI), the state agency authorized by New Jersey law to regulate insurance rates. Importantly, Plaintiffs acknowledge that Defendants submitted their proposed rates to the DOBI, and Plaintiffs do not suggest that Defendants charged anything other than rates approved by the DOBI. These concessions, Defendants argue, preclude Plaintiffs' antitrust claims under the Sherman Act and

3

the analogous New Jersey Antitrust Act[3] by virtue of the filed rate doctrine. Plaintiffs counter that the filed rate doctrine should not bar their antitrust claims because the DOBI did not, and could not, conduct meaningful review of Defendants' proposed rates, both because of an inadequate regulatory system and because of Defendants' alleged conspiracy to conceal kickbacks and referral fees in their proposed rates. Unfortunately for Plaintiffs, application of the filed rate doctrine does not depend upon meaningful agency review of filed rates, and there is no fraud exception to the filed rate doctrine. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 417 n.19 (1986) (rejecting contention that filed rate doctrine required a specific degree of investigation by the regulatory agency); *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 535 (3d Cir. 2006) (recognizing that the filed rate doctrine has no fraud exception) (citations omitted); *cf. Town of Norwood, Mass. v. New England Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) ("It is the *filing* of the tariffs, and not any affirmative approval or scrutiny by the agency, that triggers the filed rate doctrine.") (citations omitted).

The filed rate doctrine originated in *Keogh v. Chicago & Northwestern Railway Co.*, wherein the Supreme Court determined that the Interstate Commerce Commission's approval of freight rates submitted by the defendants in that case exempted the defendants from a private antitrust action seeking damages on the basis of those rates. 260 U.S. 156, 161–65 (1922). The doctrine operates to bar private antitrust suits arising under either federal or state law where the challenged rates have been filed with and approved by the appropriate government agencies in accordance with applicable laws. *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d 303,

---

[3]The New Jersey Antitrust Act by its express terms confines its scope to the boundaries of the federal antitrust statutes. N.J. Stat. § 56:9-18 ("This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes.").

306 (3d Cir. 2004) (citations omitted); *Weinberg v. Sprint Corp.*, 173 N.J. 233, 244 (2002); *see also Richardson v. Standard Guar. Ins. Co.*, 371 N.J. Super. 449, 461 (App. Div. 2004) ("We disagree with plaintiff's preliminary contentions that the filed rate doctrine is a bankrupt theory which should not be expanded beyond those specific industries to which it has been applied, that it is a purely federal doctrine which has no application when the rates in question have been filed with a state regulating body, and that it is inapplicable to the insurance industry.")  The doctrine reflects courts' general reluctance to substitute their judgment of what constitutes a lawful or reasonable rate for the judgment of the regulatory agency vested with primary authority to make such determinations.  *See, e.g.*, *AT&T Corp.*, 470 F.3d at 535 (citations omitted); *Wegoland v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994).  The doctrine also reflects the judiciary's inability, by virtue of the case-based adjudication process, to remedy a consumer's established injury without discriminating against similarly situated, non-suing consumers that continue to pay the original, unlawful rates.  *Wegoland*, 27 F.3d at 19 (citing *Keogh*, 260 U.S. at 163–64).

Plaintiffs characterize the filed rate doctrine as a doctrine that has passed its prime, noting some jurists' concerns about its continued vitality.  *See, e.g.*, *Weinberg*, 173 N.J. at 293–94 (Verniero, J., joined by Stein and Zazzali, JJ., dissenting) (describing the doctrine as a "legal fiction" and arguing that it should be discarded).  Yet both the United States Supreme Court and the New Jersey Supreme Court have declined to retire the doctrine in recent years.  *Square D*, 476 U.S. at 423–24; *Weinberg*, 173 N.J. at 242–47.  Plaintiffs also ask the Court to employ the rationale of *FTC v. Ticor Title Insurance Co.*, wherein the Supreme Court based immunity from antitrust claims upon the administrative agency's active supervision of insurance rate submissions, but *Ticor* involved the application of a different legal principle—the state action

5

doctrine—in the context of an administrative action brought by the Federal Trade Commission. 504 U.S. 621, 634–40 (1992). Thus, the Court fails to understand how *Ticor* imposes a meaningful review standard for application of the filed rate doctrine, which operates to bar private antitrust actions.

Contrary to Plaintiffs' assertions, a number of courts have recognized that the filed rate doctrine applies in the context of private suits challenging insurance rates approved by state regulatory agencies. *E.g.*, *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1427–29 (S.D. Fla. 1997) (title insurance); *Santomenno v. Allmerica Financial Corp.*, L-2533-04, 2008 WL 123920, at *2–3 (N.J. Super. Ct. App. Div. Jan. 15, 2008) (automobile insurance, filed with the DOBI); *Prentice v. Title Ins. Co. of Minn.*, 500 N.W.2d 658, 662–64 (Wis. 1993) (title insurance). Consequently, the Court sees no reason why the filed rate doctrine would not apply in this context. It is undisputed that New Jersey law vests the DOBI with regulatory authority over insurance rates, including title insurance rates, N.J. Stat. Ann. §§ 17:1C-19(a)(1), 17:46B-45(a), and that title insurance providers must submit their proposed rates to the Commissioner of the DOBI for approval, N.J. Stat. Ann. § 17:46B-42(a). Further, it is undisputed that New Jersey law permits title insurance providers to satisfy the statutory rate-filing requirements by joining a licensed title insurance rating organization such as NJLTIRB and filing its proposed rates through that organization. N.J. Stat. Ann. § 17:46B-42(b). Plaintiffs acknowledge that Defendants filed their proposed rates through NJLTIRB, and Plaintiffs do not suggest that Defendants charged anything other than rates approved by the DOBI. Under these circumstances, the filed rate doctrine bars Plaintiffs' private action challenging Defendants' title insurance rates, which have been filed with and approved by the DOBI.

The fact that Plaintiffs present this matter as a class action does not affect this conclusion. *See Square D*, 476 U.S. at 423 (declining to retire filed rate doctrine, despite development of class action lawsuits); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 61 (2d Cir. 1998) (noting the continuing application of the filed rate doctrine to class actions since *Square D*) (citations omitted).  Nor does the fact that Plaintiffs seek injunctive relief, because Plaintiffs' broadly conceived request for injunctive relief, in addition to seeking prospective relief from price-fixing on future rates, attacks the previously filed rates in the same way that their request for damages does.  (*See* Consolidated Am. Compl., Prayer for Relief, ¶ (d) (seeking to enjoin Defendants from "continuing, maintaining or renewing the aforesaid combination, conspiracy, agreement, understanding or concert of action, [or] adopting or following any practice, plan, program, or design having a similar purpose or effect in restraining competition").)  Thus, the Court cannot grant Plaintiffs' requested injunctive relief without usurping the authority of the DOBI that has already approved Defendants' rates.  *See, e.g.*, *Town of Norwood*, 408 F.3d at 419; *In re Cal. Wholesale Elec. Antitrust Litig.*, 244 F. Supp. 2d 1072, 1078 (S.D. Cal. 2003), *aff'd*, 384 F.3d 756, 761–62 (9th Cir. 2004).

The Court is not convinced that further amendment would be futile.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, the Court will dismiss Plaintiffs' Consolidated Amended Complaint (Doc. No. 85) without prejudice and grant Plaintiffs leave to amend the Consolidated Amended Complaint.

Because the Court rules in favor of all Defendants on the merits, it need not resolve the jurisdiction and venue-based motions presented by SISC and ORIC at this time.  The Court will deny these motions as moot and grant these Defendants leave to refile these motions in the event

that Plaintiffs replead.

### III.     CONCLUSION

For the aforementioned reasons, the Court will grant Defendants' joint 12(b)(6) motion, but grant Plaintiffs leave to amend the Consolidated Amended Complaint. The Court will deny as moot the jurisdiction and venue motions presented by SISC and ORIC. An appropriate form of order accompanies this Memorandum Opinion.


Dated: October 5, 2009

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.